Good morning, Your Honors. May it please the Court. Sheila Chen and Samantha Goetz, certified law students under the supervision of Peter Ofisiabi and Catherine Davis, appearing on behalf of Petitioner Hugo Cabrera. I will address the asylum claim and my colleague will address the due process argument. We'd like to request two minutes for rebuttal, please. As to past persecution, the evidence compels the finding that there was a sufficient nexus. Cabrera is a long-time leader of Faro, who not only organized a political rally, but also he stood right next to the person delivering the political speeches. Cabrera faced tear gas, was shot, hospitalized because the military police received orders and executed these orders to shoot political protesters in the legs. Is there any evidence of that statement you provide? The record indicates that the police chief, Figueroa, had authorized these orders to shoot political protesters at the University of San Carlos in the legs. And Cabrera was subsequently held at gunpoint in the hospital after his name, his affiliation, where he was hospitalized... But we don't know who held him at gunpoint, do we? We do, Your Honor, because Cabrera testified that they were the military police. When he testified about being repressed by the national police on AR-559, he said... Didn't he say they were in plainclothes? Yes, he said that they were dressed as civilians. And by definition, this means that they were not civilians. And furthermore, he said, in reference to being repressed by the national police, he said, I was taken to a private hospital where we were subject to, at that hospital, they wanted to kidnap us, some of the members of the Intelligence National Police in the Army. And so, therefore, this is the only logical inference, is that they were the same forces responsible for the political shooting. And furthermore, Cabrera's similarly situated political colleagues were also hospitalized, killed, and disappeared after their involvement with the 1994 protests. And the pursuit continued years later after Cabrera participated in the lawsuits against the persecutors, and their convictions were overturned. I'd like to ask a question. I don't want to interrupt your argument, but you have so little time. I'm worried about the nexus of the harm to a protected ground. There were 3,000 people, is that right? That's correct, Your Honor. And how can we establish that he was shot, he personally was shot, as a leader of this group? How can we conclude he was personally singled out when he testified that the police were shooting indiscriminately into the crowd? Your Honor, they may have used the word indiscriminately, but when you look at the facts in the totality, it shows that he had a political opinion, and he was shot. Because of this political opinion, the military officers ordered to shoot the political protesters at this university. Let's look at this. First of all, just because he attended a political rally with a crowd of people does not mean that he's not eligible to be showing that he was targeted for political ground. And second of all, we see that in some of the case law, just because more than one person was targeted does not mean that it was on evidence that he was targeted. Yes, Your Honor. Let's, and I'll explain the facts side by side. First, he was, Cabrera leads a political rally at the university known for confronting military dictatorship. Well, he helps to organize a gathering of reportedly 3,000, of which there had not been advance notice. So the police discover this very large crowd. Police decide perhaps they need to disperse it. You're drawing an inference they're doing that because they didn't like the political opinion being espoused, although the political opinion apparently had something to do with bus fares. So not, not the most cutting edge violent issue. Isn't it just as plausible? And isn't there substantial evidence to support a conclusion that the police were simply trying to disperse a crowd? They may have gone over the top by, by shooting at people. But what tells us that this individual is being targeted and is at risk because of his political beliefs? Your Honor, a couple of things. So first, I'd like to say that the government, government argued that the political shootings were a result of protest or violence, but there's no evidence of violence, credible evidence of violence in this case. Cabrera testified that he protested. You, you've got to, you've got to overcome a high standard. That is that the evidence compels a conclusion to the contrary. There's not much evidence. Then what keeps the agency from being able to reach the judgment that it reaches? That's correct, Your Honor. However, what happened is that Cabrera, the military police arrived, political speeches are being delivered to which Cabrera standing next to the person delivering the speeches. And during this time, without any warning, they fired tear gas and then they shoot at the protesters, the protesters who chose to stay because they believed in the right to peacefully protest this political opinion. In light of the totality of the circumstances, there's, the pursuit continues to, we see the pursuit continuing. As soon as his name, where he's hospitalized, his political affiliation is published in the newspaper, there's the military police at the hospital again trying to kill him. After he bravely participates in lawsuits against the same people who are responsible for the 1994 shooting and their convictions are overturned, there's the military police also trying to follow him. So in light of all of these circumstances, when viewed all the facts together, there's more than enough evidence to compel a finding that there was a sufficient nexus. And I know you're nervous about eating your colleagues' time. Thank you. I'll reserve the rest of my time for my colleagues. Good morning, Your Honors. There was a due process violation when the IJ failed to record the hearing verbatim. She has a duty to do so under 8 CFR 1240.9. Just a minute now. You know, it's the mechanical, as I understand, recording system they used and everybody knew there was a malfunction. Didn't he do as much as he could to ask him, well, did I summarize it correctly? Do you have any objections? And isn't that issue waived? No, Your Honor, it's not waived. Cabrera has a liberty interest in a verbatim record. The Ninth Circuit has regarded this as such and court has a cost on page 582 and 583. And to the extent that it can be waived, first of all, there's no reported Ninth Circuit case law that says it can be waived because it's a regulation, not just a due process violation. Almost everything can be waived. Is there anything to support the proposition that it can't be waived? Yes, Your Honor. In this case, it was not a knowing waiver. In order for it to be a knowing waiver... Well, that's different than saying it can't be waived. Well, there's two propositions that we make. First, we make the proposition that the IJ simply has a regulation and has to follow it. This is one of those things that it's just fundamental and it shouldn't be something that's allowed to be waived. A violation of regulation doesn't automatically translate into a constitutional violation of due process. No, Your Honor, it does not. However, since we've seen this in Cortez Acosta, I'm sorry, not Cortez Acosta, Calles Pineda, the Ninth Circuit has already considered that a verbatim record is something that is a liberty interest. So it's not just... Before tape recorders and court reporters, there were never verbatim records and yet that wasn't a violation of due process. Yes, Your Honor. But in this case, one of the biggest problems is the fact that we cannot review the facts as Cabrera said it. Your client was sitting there. He apparently said, that's an accurate summary. No objection. Let's move on. He didn't understand that he had the liberty interest. The IJ should have actually said, you have this liberty interest. I'm supposed to do this verbatim. Are you okay with the summary? And saying, is this accurate? And what makes you... What case says that? That the IJ has to tell him he has a liberty interest? Well, Your Honor, actually, there's a few cases, not necessarily in this context. However, we see in Agaiman v. INS and Jacinto v. INS, that the IJ has to explain due process, or I mean, has to explain adequately to a pro se litigant hearing procedures. And this is a hearing procedure. She didn't explain adequately what she had to do. She reviewed the evidence and said to him, is this accurate? And he said, yes. Accurate, though, is not all of it. We don't know exactly what he said. And we have no record to see whether her... All right, so let's assume it was not all of it now. And let's assume further that there was a due process violation. The second thing you have to show that he was prejudiced by. Yes, Your Honor. And what's your showing of prejudice? We first say that this court should infer prejudice, because in cases where the IJ undercuts the normal course of proceedings... Now, what case says that? You have to... You should infer prejudice. Canomerida on page 965. In what context? So, in Canomerida, actually, you have an applicant... The IJ convinced the applicant to withdraw his application off the record. The applicant was able to continue to go if he wanted to, but he chose to withdraw, because the IJ told him to. This case, we actually have it even worse. The IJ actually didn't even give him a choice. Didn't say right before she did the summary, I should... This is what I have to do. Do you accept that I don't? Do you understand this is a liberty interest? Further... Well, so far, you haven't addressed the issue of prejudice. If Your Honors don't want to infer prejudice, we still have prejudice, because Cabrera didn't get to say his testimony in his own words. He has a right to do so under 8 CFR 1229A. And the IJ's summary simply set him up for failure on review. It's a circular review. The findings of facts are because of her facts that she heard them. That's all we have. We don't have what he actually said. And since asylum applications are won and lost on words alone, that's... Well, she's the one to make... The IJ is the one to make the findings of fact. And... Yes. And she heard the testimony. So I don't see a problem there. Then you get to the issue of, was there something that could not be presented to the BIA to argue that the factual findings were clearly erroneous, because there was no transcript to point to? Was there any defect pointed out to the BIA, something that was missing because the transcript was not there? No, Your Honor. He did not say it in the BIA. However, it's not waived. Well, then we come to us. Okay. We're reviewing with still more deference. Was there anything identified in the argument made to us? What was missing? Not theoretically what might have been missing. What was missing such that we couldn't say that substantial evidence supports the conclusion that the agency came to? Yes, Your Honor. She messed up the events that led Cabrera to leave Guatemala. She said, and you can follow this along on 581 through 583, that he was followed by armed men. Sometimes the men had guns. Sometimes the men didn't have guns. Occasionally, there were some situations where he would follow them and they'd follow him. And ultimately, he just randomly leaves. However, that's not the case as Cabrera has incredibly testified and has laid out in his asylum application documents. He testified that the following intensified over time. And three days before he decided to leave the country, that's when he realized they had armed weapons. This goes to his well-founded fear. This clearly shows he had an objective fear. And to the extent that she got it wrong, all he has to show is that the IJ's violation potentially affected the outcome. And this is enough. He's made that showing. Okay. I think we have your argument. We'll still give your side a little time for rebuttal, and we'll hear from the government. Good morning. May it please the Court. My name is Dawn Conrad, and I'm here today on behalf of the United States Attorney General. In this case, the record does not compel the finding that Petitioner suffered past persecution on account of a protected ground. The agency properly found that Petitioner had not demonstrated that he was singled out and targeted by anti-riot police at the November 1994 student protest. Counsel, may I interrupt you right there? I'm sorry. Go ahead. All right. Why does Mr. Cabrera have to show he was singled out from the crowd in order that he was targeted based on a protected ground? Why isn't it enough that the entire crowd was targeted based on a protected ground? We assume that maybe it was for security reasons, there was a big riot. But doesn't the law say that the motivation is at least in part of a political nature? And couldn't we then assume here that because his crowd was gathered for a political purpose, that that satisfies that part of the requirement? Well, if you're asking could an entire crowd ever be targeted for a political purpose, I would say yes, they could be. But here, we just don't have compelling evidence that that was the case. Rather, we have a 3,000-member student protest that was spontaneously planned, it's unpublicized, and there's no evidence that the police were aware of what caused United the protesters. There's no evidence that they were particularly being targeted for their political opinion, whatever that may be. And in other cases where you've seen situations where individuals have been targeted following protests, there's always some more evidence present that they're being specifically targeted because of their political opinion. Petitioner relies on a case called Ahmed versus Keisler in their reply brief, and in that he's beaten and detained after the political protest. He made his opinions clear to the police, and the police then threatened to kill him should he resume his political activities. What do you do with the visitors to the hospital room? Well, there's not evidence in the record of who those individuals are. He basically testifies they're people in civilian clothes. We don't know if they're agents of the government or they're not agents of the government. What logical alternative would you offer up? If they're not agents of the government, who are they? They could be... I don't know. They could be candy stripers maybe, just wandering through. I mean, really, it's hard to come up with another alternative, isn't there? Well, they could be criminals of some sort. We don't know. We don't know what their purposes were. All we know is that they left as soon as medical staff and security personnel arrived, and they didn't pursue Petitioner further after that point. There is case law from other circuits where they have addressed people's violence against mass protests, and those circuits have held that they must be specifically targeted by the government, and he must distinguish himself from other demonstrators in some way. Are those cases cases where the individual in question was actually shot? At least one of them was, I believe. Leaving aside the enumerated grounds, wouldn't shooting qualify as sufficient injury to qualify as persecution, past persecution? Well, Your Honor, the agency did not address whether the harm he suffers amounted to past persecution in this case, or amounted to persecution, because they found it was not on account of a protected ground. See, I'm not sure. I'm reading the BIA's decision, and it starts by saying, has not met his burden to establish he suffered past persecution. Talks about the indiscriminate nature of the shooting. Does not appear to say that, well, he was injured, but it wasn't on account of an enumerated ground, although that may be an inference that could be drawn. And then goes on to say, and besides, the government took action to arrest the people anyway. So I'm not entirely sure what the agency's decision is based upon. So help me here. You accept that shooting is ordinarily enough to constitute persecution? Actually being shot, so you've got to go to the hospital. I wouldn't be willing to make a blanket statement saying that is the case. But I don't think we have the Board even addressing that in this case. I think its decision is entirely based that it's not shown on account of a protected ground. Neither the IJ nor the Board addresses whether the harm he suffered rises to the level of persecution. Well, where do they say protected ground? Well, they say... I mean, the only reference I see is in a parenthetical in a citation to Ochave. Right. Otherwise, I don't see a discussion of protected ground at all. We're left to infer that's the basis for it. Well, they talk about he admits that the police were shooting indiscriminately at the crowd. That's talking about the purpose of the shooting. So how does that make it not a protected ground? Because you have to show more than they were just shooting indiscriminately. You have to show that the petitioner was specifically being targeted... Why? ...based on his political... Well, but if he's there... ...and the crowd is being shot at, and he's actually hit, now how is it that the shooting isn't on account of a protected ground if he's there because of his political belief? Because you have to show what the persecutors' motives were, and there's no evidence that the... Well, who did they think they were shooting at? They were shooting at a large student protest that was unpublicized and spontaneous, and there's evidence in the record showing people had complained about the size of this protest. And does the BIA say that as a result we think this was just law enforcement, not a response to a political protest? I don't think the BIA makes that distinction. And that's one of the reasons I'm struggling. I don't know what the BIA is relying upon here. I think the BIA is relying on the fact that it appears to be indiscriminate violence, that it was directed toward a large crowd. Well, indiscriminate violence is not like a random act of criminal misconduct, is it? I mean, this is a directed shooting. There's no question, but the shooting is aimed at protesters. That's correct. Now, it may be that he's not targeted in such a way as it gives him reason to be personally concerned about the future, but right now I'm still on the past persecution proposition. And if I'm in a gathering as part of a political protest, and a bunch of people get shot, and I'm one of them, I'm not sure why the shooting isn't because I'm there at the protest. At least in part. Because this is a pre-real ID Act case. That's correct. Well, what we just don't have is any evidence showing that they're being targeted because of their political beliefs in this case. There's certainly not compelling evidence indicating that. I come back to the proposition, what else is there? They're responding to a large crowd. This is, what are they called, the immediate response force. I mean, there's no debate here that they used excessive force to respond to this protest. They were prosecuted in Guatemala and criminally convicted because of it. But there's no evidence that they are targeting these individuals and shooting into the crowd for political reasons, to suppress the political opinion. Rather, it is indiscriminately. And then the board also points out that he was not, like we see in so many cases, detained, questioned, beaten afterwards. He's actually taken by firefighters to the hospital. And then, returning to his claim of future persecution, we again also don't have compelling evidence in the record that these individuals that allegedly followed him in November 1997 to when he left Guatemala, who they were or who they were associated with. He never claims that they confronted or threatened him. He has not presented sufficient evidence of their identity or motives. And then briefly, just touching on the due process claim, there is no evidence. Well, first of all, the IJ did what she could to rectify the situation after there was a malfunction of the tape recorder. She confirmed with him that his testimony was accurately reflected, and he said it was. She asked him again a few pages later whether he had anything to add. And Petitioner has not shown any prejudice as a result of this transcription mistake. If there are no further questions, we respectfully ask the court to deny the petition for review. Thank you. Thank you. Your Honor, there was no evidence of crowd control tactics here. Barrera testified that the crowd was protesting peacefully. Military police showed up, advanced the line, and fired— Three thousand people is a pretty big crowd. That's correct, Your Honor. And his own testimony was that it wasn't announced or the police were suddenly faced with this group of three thousand people protesting about the raise in transportation costs. Sure, Your Honor. However, just because there was a crowd does not preclude his claim. As the Ninth Circuit has said in Singha, that violence directed against one person is not somehow less on account of his political opinion because many other individuals of a particular group are also being targeted on account of the same reason. But what tells us they're being targeted because of the political position they were taking, the bus fare protest, as opposed to the police decided, over the top with force, to break up this large crowd. There was no announcement. They're concerned about what's going to happen when this large crowd gathers and so forth. So what makes us believe that it's not just crowd control, that it's politics? So, first of all, the assumption that the police were ordered there to break up the crowd is not supported by the evidence. As the Government Council has already mentioned, they're not sure as to whether there could be other reasons for targeting this guy because those assumptions are not supported by the evidence on the record. The evidence on the record shows that the protest took place at a university with a reputation for being at the forefront of confronting military dictatorship. This protest was held... A protest about bus fares. Which is a political opinion, Your Honor. Which is a political opinion. And furthermore, the individuals who stayed behind even after tear gas were thrown at them, they believed in their right to protest peacefully and they believed in the ideals of bringing democratic ideals to Guatemala. And they're bravely protesting for this purpose. So, and what's more... Well, you know, we're really not concerned with their motives. We're concerned, right, with the motives of the anti-riot police who responded to the crowd. And just because we know now that the petitioner and those other leaders of the crowd had that motive for the gathering, you know, the showing is quite sketchy that the police knew that was the motive of the rioting, isn't it? Well, Your Honor, once the police shows up, you know, in the middle of the speeches being delivered, political speeches that they're protesting about, it's obvious to, when the protesters are protesting peacefully, the speeches are being delivered. Any military police officer who arrives on the scene should then be able to see that these are political speeches being delivered. And what they did immediately after that was they fired tear gas and they shot at the protesters. So the evidence on the record compels a finding that there was a sufficient nexus. And I think I'm out of time. You are. We thank both counsel, all counsel, for your helpful arguments and affirmatively thank the law school and Mr. Al-Persiabi for taking on the case through the pro bono program. The case just argued is submitted.
judges: Nelson, Tashima, Clifton